**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| A VISION FOR YOU, LLC, TYLER BELL, JOHN MARSHALL WILSON, and CHRISTIAN STEWARD, | ) | |
| Plaintiffs, | ) | No. 2:24-cv-03007-TLP-atc |
| v. | ) | JURY DEMAND |
| THE CITY OF MEMPHIS and SHELBY COUNTY, | ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS**

In December 2024, Plaintiffs A Vision for You, LLC ("AVFY"), Tyler Bell, John Marshall Wilson, and Christian Steward sued Defendants the City of Memphis ("City") and Shelby County ("County"). Plaintiffs allege violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq. ("FHA") and Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). (ECF No. 1 at PageID 1.) Defendants moved to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (ECF Nos. 24, 26–27.) And Judge Jon Phipps McCalla denied their Motion. (ECF No. 36) In June 2025, the case was reassigned to the undersigned. (ECF No. 37–38.) In July 2025, Defendants answered. (ECF Nos. 42–43.) And in October 2025, the City moved for judgment on the pleadings. (ECF No. 54.) Plaintiffs responded. (ECF No. 69.) And the City replied. (ECF No. 71.)

For the reasons below, the Court **DENIES** the City's Motion for Judgment on the Pleadings.

The Court will now lay out the factual background.

## BACKGROUND

Plaintiffs assert five claims under the FHA and ADA: (1) discrimination under the FHA; (2) failure to grant a reasonable accommodation under the FHA; (3) retaliation under the FHA; (4) discrimination under the ADA; and (5) failure to grant a reasonable accommodation under the ADA. (ECF No. 1 at PageID 1, 12–17.) Judge McCalla summarized the background in his Order on Defendants' Motion to Dismiss. (*See* ECF No. 36 at PageID 218–21.) The Court draws heavily from that Order in recounting the facts here.

### I. The Parties and the Property

AVFY is a for-profit Tennessee limited liability corporation ("LLC") with a mission of "provid[ing] housing to people in recovery from alcoholism and substance abuse." (ECF No. 1 at PageID 2–3.) Bell and Wilson are co-owners of AVFY. (*Id.* at PageID 3.) AVFY rents a house at 1925 Nelson Avenue, Memphis, Tennessee ("Property"). (*Id.*) Steward owns the Property. (*Id.*) The City and County require the Property to comply with their zoning, building, and property maintenance codes ("Code"). (*Id.*) The Property is in an R-6 zoning district—a residential zone. (*Id.* at PageID 8; ECF No. 54-1 at PageID 323 n. 2.)

The Code defines "family."[1] (ECF No. 1 at PageID 8.) Defendants permit families, as defined in the Code, to live as of right in all-single family residential zones in Memphis. (*Id.*)

---

[1] The Code's definition of family includes up to eight unrelated, individuals with disabilities and three additional "houseparents or guardians."

> In addition to customary domestic servants, either (a) an individual or two or more persons related by blood, marriage or adoption, maintaining a common household in a dwelling unit; or (b) a group of not more than four persons who are not related by blood, marriage, or adoption, living together as a common household in a dwelling unit, or "(c)" a group of eight or fewer unrelated mentally retarded, mentally handicapped or physically handicapped persons, (as certified by any authorized entity including governmental agencies or licensed medical

Defendants are political subdivisions of the State of Tennessee. (*Id.* at PageID 3.) AVFY currently operates four recovery homes in Tennessee, each using the same recovery home model and certified by the National Alliance of Recovery Residences. (*Id.* at PageID 6–7.) AVFY residents live together in single-family residences and maintain sobriety while completing a separate substance abuse treatment program. (*Id.* at PageID 7.) AVFY does not provide a substance abuse treatment program, counseling, or therapy to its residents. (*Id.*) AFVY states that their residents "live together as a family and make group decisions based on a collaborative basis." (*Id.*)

## II. Requests for and Denials of Reasonable Accommodations

AVFY wishes to operate a facility for up to eight unrelated residents and three house leaders at the Property. (*Id.* at PageID 9.) In early August 2024, AVFY therefore requested an accommodation under the FHA so that (1) the City would treat AVFY and its residents at the Property as a "family" under the Code; and (2) the City would waive the nonprofit status requirement under the Code. (*Id.* at PageID 9–10.) Plaintiffs argue the restriction of requiring sober homes to be run by only non-profits violates the FHA. (*See id.* at PageID 10.) On August 30, 2024, the City denied AVFY's accommodation request. (*Id.*)

---

> practitioners), and may include three additional persons acting as houseparents or guardians, also need not be related to each other or to any of the mentally retarded, mentally handicapped or physically handicapped persons in the group, living together in a residence licensed, where required by law, by a duly authorized governmental agency, or in other instances, approved by the Planning Director who shall provide any such applicant with written notice of his determination. This (c) definition of "family" does not apply to residences wherein mentally retarded, mentally handicapped, or physically handicapped persons reside when such residences are operated on a commercial basis.

Memphis & Shelby County Unified Dev. Code (UDC) § 12.3.

On October 4, 2024, Plaintiffs renewed their request for an accommodation from the City's nonprofit status requirement. (*Id.*) Plaintiffs also requested an accommodation from the requirement that they install a wet sprinkler system at the Property.[2] (*Id.*) Plaintiffs allege the City issued citations to Wilson and Steward in response to this second request. (*Id.*) The citations state that they are for "[o]perating a supportive living facility on a commercial basis in a single family residential zone." (ECF No. 43-1 at PageID 290, 292.) And Plaintiffs allege that, on October 23, 2024, City officials and police officers tried to enter the Property without a warrant and threatened to arrest Wilson but eventually left. (*Id.* at PageID 11.) They insist that they were not operating a recovery home at that time and that only three people occupied the Property. (*Id.* at PageID 9, 11.) The City eventually dismissed its prosecution for the citation against Wilson but has not done so against Steward. (*Id.* at PageID 11–12.)

## LEGAL STANDARD

Courts may grant a Rule 12(c) motion for judgment on the pleadings only if the moving party is "clearly entitled to judgment." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (quoting *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017)). And the familiar Rule 12(b)(6) motion-to-dismiss standard guides that determination. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Timing is the only difference between the two motions—a party can only move under Rule 12(c) if they do so "early enough not to delay trial." Fed. R. Civ. P. 12(c). Plaintiff does not dispute that the City's Motion is timely here.

To survive a motion to dismiss, a plaintiff must allege enough facts to "state a claim to relief that is plausible on its face." *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (quoting

[2] Plaintiffs claim that the Code does not impose a sprinkler requirement on other residences housing more than eight unrelated people, such as short-term rentals. (ECF No. 1 at PageID 10.)

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And the ruling court must accept all factual allegations as true. *See Crawford*, 15 F.4th at 762.

But it need not accept a plaintiff's legal conclusions or make unreasonable inferences in favor of a plaintiff. *See id.*; *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). Instead, the "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir. 2019) (quoting *Commercial Money Ctr. v. Ill. Union Ins.*, 508 F.3d 327, 336 (6th Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). What is more, when reviewing a motion to dismiss, the ruling court generally restricts its review to the face of the complaint. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022). Still, in reviewing a motion to dismiss, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024).

The Court will now analyze Plaintiffs' claims.

## ANALYSIS

### I. The FHA and ADA

The FHA and the ADA are two federal statutes that protect people with disabilities from discrimination by governmental entities in the implementation and enforcement of housing

policies. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 539–40 (2015) (the FHA seeks to eradicate "zoning laws and other housing restrictions that function unfairly to exclude" protected groups); *Clearview Residences, LLC v. Memphis & Shelby Cnty. Bd. of Adjustment*, No. 2:20-cv-2117-SHL-atc (W.D. Tenn. Sept. 4, 2020). And they both include drug addiction and alcoholism as disabilities.[3]

Under the FHA, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in, or intending to reside in, that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(1). And the FHA prohibits discrimination against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities for such dwelling, based on a handicap of any person residing in or intending to reside in that dwelling after it is sold, rented, or otherwise made available. 42 U.S.C. § 3604(f)(2).

FHA regulation—24 C.F.R. § 100.70(a)—prohibits "restrict[ing] or attempt[ing] to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood or development" because of handicap. And § 100.70(d)(4) prohibits "[r]efusing to provide municipal services or

---

[3] Under the FHA, a person with a "handicap" has a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 3602(h). "[P]hysical or mental impairment[s]" include "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of a controlled substance)." 24 C.F.R. § 100.201. The ADA similarly defines "disability." See, e.g., *Tsombandis v. West Haven Fire Dept.*, 352 F.3d 565 (2d. Cir. 2003). The Parties do not dispute that AFVY's clients have a "handicap" and "disability" under the FHA and ADA, respectively.

property or hazard insurance for dwellings or providing such services or insurance differently because of . . . handicap . . . ."

Discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The FHA also contains an anti-retaliation provision that makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed… any right granted or protected by [the FHA]." 42 U.S.C. § 3617.

Title II of the ADA states, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. And 28 C.F.R. § 35.130(b)(4)(I) makes it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities, denying them the benefits of certain locations, or otherwise subjecting them to discrimination. What is more, § 35.130(b)(6) provides the prohibition that "[a] public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability." The Sixth Circuit has recognized that Title II includes a cause of action for failure-to-accommodate claims. *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004) ("Title II does more than prohibit public entities from intentionally discriminating against disabled individuals. It also requires that public entities make

reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide.")

## II. Plaintiffs' FHA Claims

### A. Discrimination Claim

Plaintiffs' first FHA claim is for discrimination. (ECF No. 1 at PageID 12–13.) They allege that Defendants have denied the prospective AFVY residents the dwelling of their choice based on their disability by using threats, by imposing the sprinkler system requirement, and by their selective application and enforcement of the Code.

But the Parties disagree about the law that applies under these circumstances. The City points to the test laid out in *Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*. They argue that to make a discrimination claim under the FHA, a plaintiff must prove that: (1) she is a member of a protected class; (2) she applied to and was qualified to rent or purchase certain housing; (3) she was rejected; and (4) that the housing remained available later. 508 F.3d 366, 371 (6th Cir. 2007) (citing *Maki v. Laakko*, 88 F.3d 361, 364 (6th Cir. 1996)). According to the City, Plaintiffs cannot satisfy the second element because they were not "otherwise qualified" to rent the Property because of AFVY's for-profit status. (ECF No. 54-1 at PageID 327–28.)

Plaintiffs look to *Larkin v. Michigan Department of Social Services*, 89 F.3d 285, 289–90 (6th Cir. 1996). (ECF No. 69 at PageID 447.) Plaintiffs argue that the ruling in *Larkin* holds that the FHA prohibits facial discrimination. (*Id.*) And "an ordinance is facially discriminatory when it explicitly singles out housing for persons with disabilities for different or adverse treatment." (*Id.*)

The disagreement between the Parties is difficult to resolve. The City's argument makes intuitive sense. The occupancy limits imposed by § 12.3 of the Code do not explicitly discriminate because of AFVY's residents' disabilities. Instead, § 12.3 distinguishes between sober living homes based on their corporate form. And the Code allows nonprofit sober living homes to have more occupants—eleven—than a typical residence housing unrelated individuals could have—four. So, says the City, a commercial sober living home, like AVFY, under § 12.3 would be treated just like any other residence of unrelated individuals. To the Court, the structure of § 12.3 appears to offer a benefit to nonprofit sober living homes rather than a restriction on for-profit ones.

But the holding in *Larkin* says otherwise. "As we have previously noted, statutes that single out for regulation group homes for the handicapped are facially discriminatory." *Larkin*, 89 F.3d at 290. *Larkin* addressed spacing and notice requirements under the Michigan Adult Foster Care Licensing Act, which, as the name suggests, governed the licensing of adult foster care facilities in Michigan. *Id.* at 287. And while those requirements did not distinguish between adult foster care facility residents based on their disabilities and single some out for different treatment, they applied neutral requirements to adult foster care facilities. The Sixth Circuit held that the state statutes were facially discriminatory and therefore amounted to intentional discrimination. *Id.* at 289–90 ("However, facially discriminatory actions are just a type of intentional discrimination or disparate treatment, and should be treated as such. . . . Here, the challenged portions of MAFCLA are facially discriminatory."). It determined that a finding of facial discrimination shifted the burden to the government to show "that [the challenged provisions] are warranted by the unique and specific needs and abilities of those handicapped persons to whom the [provisions] apply. *Id.* at 290 (omitting internal quotation marks). It

affirmed the district court's grant of summary judgment because the state's justifications did not make the requisite showing. *Id.* at 292..

> By this holding, we in no way mean to intimate that the FHA, as amended by the FHAA, prohibits reasonable regulation and licensing procedures for AFC facilities. As was stated in *Marbrunak*, "the FHAA does not prohibit the city from imposing any special safety standards for the protection of developmentally disabled persons." *Marbrunak*, 974 F.2d at 47 (emphasis in original). Rather, it merely prohibits those which are not "demonstrated to be warranted by the unique and specific needs and abilities of those handicapped persons."

*Id.* The same is true here, where § 12.3 explicitly prevents for-profit housing *for people with disabilities* from having up to eleven residents.

One way to illustrate how § 12.3 could function discriminatorily is by imagining a residential neighborhood in which both for-profit and nonprofit sober living homes can operate with up to eleven residents. Recovering addicts could choose to reside in either type of housing, according to their preference. Under § 12.3, recovering addicts seeking to live in a residential neighborhood may be limited to residing in sober living homes run by non-profits even if that conflicts with their preference. This illustration, of course, depends on some factual conclusions that the Court cannot make at this stage in the litigation. The most important of these is whether § 12.3 meaningfully limits the choices of recovering addicts in sober-living homes. But at this point, Plaintiffs have plausibly pleaded that § 12.3 distinguishes between individuals with disabilities based on their preference in housing provider. Because the residency restriction in § 12.3 applies only to for-profit housing for individuals with disabilities, Plaintiffs have plausibly pleaded that the provision is facially discriminatory under *Larkin.* The same is true for Plaintiff's allegation that the wet sprinkler requirement applies only to for-profit housing for disabled individuals.

For these reasons, the Court **DENIES** the City's Motion as to Plaintiffs' claim of intentional discrimination under the FHA.

### B. Failure-to-Accommodate

Plaintiffs' next assert a claim for failure to accommodate. Under a failure-to-accommodate theory, a plaintiff must show these elements, "(1) she suffers from a disability within the meaning of the [FHA]; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford 'an equal opportunity to use and enjoy the dwelling'; (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011) (quoting *DuBois v. Ass'n. of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir.2005)).

"[A]n accommodation is necessary [under the FHA when,] but for the accommodation, [a disabled person] likely will be denied an equal opportunity to enjoy the housing of their choice." *Howard v. City of Beavercreek*, 276 F.3d 802, 806 (6th. Cir. 2002) (internal quotation marks omitted). The necessity element examines "whether the requested accommodation . . . would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 541 (6th. Cir. 2014). "Equal use and enjoyment of a dwelling are achieved when an accommodation ameliorates the effects of the disability such that the disabled individual can use and enjoy his or her residence as a non-disabled person could." *Anderson v. City of Blue Ash*, 798 F.3d 338, 361 (6th Cir. 2015). "An accommodation is reasonable when it imposes no fundamental alteration in the nature of the program or undue financial and administrative burdens." *Howard*, 276 F.3d at 806. The Sixth Circuit has "long since rejected the notion that making an exception to a zoning scheme to permit something that

would normally be forbidden automatically amounts to a fundamental alteration." *Anderson*, 798 F.3d at 363.

The Parties do not dispute elements one, two, and five of AVFY's FHA failure-to-accommodate claim. AFVY's clients have disabilities as defined under the FHA. Defendants knew that AFVY intended to provide a sober living home to recovering addicts. And Defendants refused to make the accommodations that AVFY requested.

The Parties disagree over whether the requested accommodations were "necessary to afford an equal opportunity to use and the enjoy the dwelling" and whether they were reasonable. *Overlook Mut. Homes, Inc.*, 415 F App'x at 621. The City argues that AFVY failed to plead any facts to show the reasonableness of their requested accommodations. (ECF No. 54-1 at PageID 329.) It also insists that AFVY could have avoided the need for an accommodation to the zoning requirement by simply converting to nonprofit status. (*Id.* at PageID 329–30.) As a result, the City argues that an accommodation is unnecessary to afford AFVY's residents an equal opportunity to enjoy the Property.

Plaintiffs counter that they have plausibly pleaded their FHA failure-to-accommodate claim, claiming that they have plausibly alleged that their requested accommodations are both reasonable and necessary. (ECF No. 69 at PageID 449.) They highlight that both inquiries are fact-specific and not conducive to resolution on the pleadings. (*Id.*) They argue "[h]ere, Plaintiffs plausibly allege that the requested accommodation, a waiver of the disability-specific 'commercial basis' limitation embedded in subsection (c) of the UDC's definition of 'family,' is reasonable because it would simply allow disabled residents to be treated the same as other residential households already permitted in single-family zones." (*Id.* at PageID 450.) And as to necessity, they argue "[w]ithout a waiver . . . individuals in recovery, . . . cannot reside at [the

Property] at all. The ordinance makes the dwelling legally unavailable . . . . [T]he accommodation is necessary because, without it, disabled individuals are denied equal access to housing in a single-family residential neighborhood." (*Id.* at PageID 452.)

The Court agrees with Plaintiffs that they have plausibly pleaded their FHA failure-to-accommodate claim. Plaintiffs allege that they twice requested exemption from the nonprofit requirement and once requested exemption from the wet sprinkler requirement. (ECF No. 1 at PageID 9–10.) They allege that they informed the City that they intended to operate a sober living home for recovering addicts. (*Id.* at PageID 9.) They allege that the City specifically denied their requested accommodations. (*Id.* at PageID 10.) And while they do not explicitly allege that the accommodations are reasonable and necessary, they allege enough facts in the Complaint for the Court to find that they plausibly pleaded both elements. (*Id.* at PageID 6–12.)

First, Plaintiffs have plausibly pleaded facts supporting their claim that they cannot operate their sober living home at the Property without the accommodations. (*Id.* at PageID 9–12, 13 (Plaintiffs alleged that they asked for accommodations, they detailed the City's response, and claimed that the effect has been to deny AVFY's clients the housing they seek).) And second, Plaintiffs' allegations that families by marriage, blood, or adoption have no occupancy limit under the Code and that short-term rentals need not have a wet sprinkler system creates the plausible inference that, were the City to allow exceptions to the sprinkler requirements in their case, it would not disrupt the zoning scheme or pose an unreasonable burden on Defendants. (*Id.* at PageID 9–10.)

The City's arguments against the FHA failure-to-accommodate claim amount to an invitation for the Court to weigh the facts and decide whether the requested accommodations are necessary and reasonable. While Plaintiffs will need to bolster their claim with evidence, the

Court declines the City's invitation to decide the facts at this early stage in the litigation. Both the necessity and reasonableness inquiries are fact-intensive inquiries better suited for more thorough analysis at a later stage in the litigation after the Parties have engaged in discovery. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 363 (6th Cir. 2015).

For the above reasons, the Court **DENIES** the City's Motion as to Plaintiffs' FHA failure-to-accommodate claim.

### C. Retaliation

Plaintiffs argue that the City retaliated against them for requesting accommodations to the zoning and wet sprinkler requirements by issuing citations to Wilson and Steward and by sending law enforcement to enter the Property. (ECF No. 1 at PageID 15.)

The elements of an FHA retaliation claim are unclear. But of retaliation claims generally, the Sixth Circuit has said "[r]etaliation claims arise in any number of contexts. The essence of such a claim is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386–87 (6th Cir. 1999). And other district courts in the Sixth Circuit have applied essentially this formula to both FHA and ADA claims. *See Vance v. City of Maumee, Ohio*, 960 F. Supp. 2d 720, 734 (N.D. Ohio 2013). But the Sixth Circuit has not clarified the specific elements for an FHA retaliation claim. And so the Court will apply the general standard for retaliation claims set forth in *Thaddeus-X.*

The City argues that Plaintiffs failed to plead causation plausibly. (ECF No. 54-1 at 331.) It insists that the citations it issued to Wilson and Steward stated on their face that they were for "[o]perating a supportive living facility on a commercial basis in a single family residential

zone," which Plaintiffs do not contest. (*See id.* at PageID 325, 331.) The City adds that Plaintiffs admitted the basis for the citations. (*Id.* at PageID 331.) And it asserts that "Plaintiffs refused to say whether they were continuing to operate a sober home at the property," during the hearing on the citations. (*Id.*) The City argues therefore that the citations were for Code violations and not in retaliation for requesting accommodations.

The City's argument misses the point. First, Plaintiffs plausibly plead a protected activity under the FHA by alleging that they requested accommodations. *See Brower v. Roose*, No. 24-CV-10702, 2024 WL 1694860 (E.D. Mich. Apr. 19, 2024) ("Brower submitted a request for accommodation and complained of Defendants' alleged violation in written letters. This is protected activity.") And as Plaintiffs note, retaliation need not be the only cause of Defendants' actions. There need only be a nexus between a plaintiff's protected conduct and a defendant's retaliatory action. *See Linkletter v. W. & S. Fin. Group, Inc.*, 851 F.3d 632, 639–40 (6th Cir. 2017).

Plaintiffs have alleged that shortly after they requested reasonable accommodations, the City cited them twice and sent law enforcement officers and city officials to the Property as a pressure tactic. (ECF No. 1 at PageID 9–11.) They assert that the citations "w[ere] frivolous with no basis in law" and "in retaliation for Plaintiffs' request for a reasonable accommodation." (*Id.* at PageID 11.) The allegation that the retaliation occurred shortly after the protected activity supports the finding that Plaintiffs have plausibly pleaded causation. *See Lindsay v. Yates*, 578 F.3d 407, 419 (6th Cir. 2009) ("a reasonable juror may infer a plaintiff's undertaking of a protected activity was the likely reason for the defendant's adverse action when the temporal proximity is 'very close' in retaliation cases").

The City points to Paragraph 65 of the Complaint, insisting that it is an admission that the citations against Steward and Wilson were for operating a sober living home. (ECF No. 54-1 at PageID 331.) But if one reads the rest of that page, Plaintiffs were not admitting that the City was correct in issuing the citations. Rather they were alleging the City's purported reason for citing Steward and Wilson. (ECF No. 1 at PageID 11 (alleging that the citations were "frivolous" and "in retaliation").)

Because the Court assumes all factual allegations in the Complaint to be true at this point, the City's reliance on the nominal reason for the citations, the out-of-context mischaracterization of a statement in the Complaint, and Plaintiffs' conduct at the hearing is not enough to justify dismissing this claim at this stage. A fair reading of the Plaintiffs' allegations plausibly asserts that the City retaliated against them after they requested an accommodation, a protected activity under the FHA. Because Plaintiffs allegations plausibly plead a claim for retaliation under the FHA, the Court **DENIES** the City's Motion as to the retaliation claim.

## III. ADA Claims

### A. Discrimination

Unlike the intentional discrimination claim under the FHA, the Parties do not disagree on the law as applied to intentional discrimination claims under the ADA. "To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because[1] of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). In other words, to establish a prima facie case of intentional discrimination, the "'plaintiff must present evidence that animus against the protected group was a significant factor in the position

taken by the municipal decision-makers themselves . . . .'" *Id.* (quoting *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008)) (emphasis added).

The Parties do not argue over facial discrimination about Plaintiffs' ADA discrimination claim. Still, the Court finds that the reasoning it applied to the FHA discrimination claim applies here. *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 344–45 (6th Cir. 2002) (holding a statute that prohibited methadone clinics in a city to be facially discriminatory under the ADA). Because § 12.3 explicitly limits the number of residents who can live in for-profit sober living homes as compared to nonprofit sober living homes and because the wet sprinkler requirement allegedly applies only to sober living group homes, Plaintiffs have plausibly stated a claim for discrimination under the ADA.

**B. Failure-to-Accommodate**

For an ADA failure-to-accommodate claim to survive a motion for judgment on the pleadings, a plaintiff must plausibly plead that "(1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the service, with or without a reasonable accommodation; (3) [the defendants] knew or had reason to know of her disability; (4) she requested an accommodation; and (5) [the defendants] failed to provide the necessary accommodation." *Johnson v. Cleveland City Sch. Dist.*, 443 Fed. Appx. 974, 982–83 (6th Cir. 2011) (unpublished) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)).

The City relies again on its argument that Plaintiffs are not "otherwise qualified" because they seek to operate as a for-profit entity rather than operating as a nonprofit. (ECF No. 54-1 at PageID 332–33.) In its Reply, the City also claims that "Plaintiffs' Complaint does not plead facts that establish the necessity of their requested accommodation. . . ." (ECF No. 71 at PageID 473.) Plaintiffs assert once again that to allow the City to treat the challenged zoning restriction

as an essential eligibility requirement immune from modification or accommodation would vitiate the protections of the ADA. (ECF No. 69 at PageID 461.)

At this stage of the case, the Court agrees with Plaintiffs. The Court's reasoning above related to the FHA failure-to-accommodate claim also supports a finding that Plaintiffs have plausibly pleaded the ADA failure-to-accommodate claim. But the Court notes that the elements of an ADA failure-to-accommodate claim differ slightly from the elements of an FHA failure-to accommodate claim. A claim under the ADA requires that the plaintiff be otherwise qualified for the service for which they are requesting accommodation. While the Court notes that the elements of an ADA failure-to-accommodate claim are provided in unpublished decisions, it still applies its analysis to those elements here. *See Johnson v. Cleveland City Sch. Dist.*, 443 Fed. Appx. 974, 982–83 (6th Cir. 2011) (unpublished); *A.S. by Next Friend Reid v. Shelby Cty. Bd. of Educ.*, No. 219CV02056JTFCGC, 2021 WL 6884914, at *3 (W.D. Tenn. Sept. 27, 2021) (citing *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 407 (6th Cir. 2014)).

The Court finds *Singletary v. City of Toledo* and *Larkin*, illustrative here. No. 3:23-CV-332, 2025 WL 2521120 (N.D. Ohio Sept. 2, 2025); 89 F.3d 285, 289–90 (6th Cir. 1996). Both cases dealt with the application of spacing restrictions to group homes. The defendants in those cases could make the same argument as the City makes here. Under that reasoning, the housing providers in *Singletary* and *Larkin* would not have stated a claim as a matter of law under the ADA or FHA because they sought to locate their group homes too close to other group homes. The spacing requirement has nothing to do with the disabilities of the residents of the homes. At the same time, the requirement only applies to housing for a protected class of individuals. And so, to state a claim of discrimination in *Singletary* and *Larkin* under the City's reasoning, the Plaintiffs would have first needed to comply with the allegedly discriminatory spacing

requirements before suing about them. If they failed to do so, they would not have been "otherwise qualified" for the housing.

But this reasoning would permit municipalities to discriminate against individuals with disabilities by applying restrictive, disability-neutral criteria to group housing. Such reasoning runs counter to the purposes of the ADA. *See Ability Ctr. of Greater Toledo v. City of Sandusky,* 385 F.3d 901 (6th Cir. 2004) ("Congress understood in shaping the ADA [that it] would sometimes require not blindfolded equality, but responsiveness to difference; not indifference, but accommodation.") (quoting *Tennessee v. Lane*, 541 U.S. 509, 536 (2004)) (Ginsburg, J., concurring). The Court therefore finds the reasoning the Sixth Circuit applied in *Larkin* instructive here. The law for ADA failure-to-accommodate claims is unclear and neither Party directs the Court to a case that resolves the issue. Given this uncertainty and the purposes of the ADA, the Court finds it inappropriate to dismiss this claim before allowing the Parties to engage in discovery. At a later stage of the litigation, the Court can better consider the outstanding factual questions, such as the City's motives and the reasonableness and necessity of the requested accommodations. The Court finds therefore that Plaintiffs have plausibly pleaded their ADA failure-to-accommodate claim.

For the reasons above, the Court **DENIES** the City's Motion as it relates to Plaintiffs' ADA failure-to-accommodate claim.

## CONCLUSION

For the reasons above, the Court **DENIES** the City's Motion for Judgment on the Pleadings.

**SO ORDERED**, this 28th day of August, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE